UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NIURKA ENCARNACION,

      Plaintiff,

  -against-

RMS ASSET MANAGEMENT LLC;
JEFFREY S. GREENE AS ATTORNEY IN
FACT; US NATIONAL ASSOCIATION AS
TRUSTEE; GMAT LEGAL TITLE TRUST
2014-1, *et al.*,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

17cv5299

OPINION & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

    Plaintiff Niurka Encarnacion brings this pro se action against Defendants RMS Asset Management LLC, its attorney Jeffrey S. Greene, and GMAT Legal Title Trust 2014-1 to challenge the foreclosure of her apartment and her subsequent eviction. Defendants move to dismiss the Second Amended Complaint ("Complaint") pursuant to Rule 12(b)(1) and Rule 12(b)(6). For the following reasons, Defendants' motion is granted.

BACKGROUND

    This action is the latest chapter in a dispute between Encarnacion and Defendants arising from the foreclosure of and Encarnacion's eviction from her apartment at 501 West 150th Street. The relevant facts are gleaned from the Complaint and factual allegations made in Encarnacion's opposition papers. See Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013). The narrative also draws from public filings and judgments from prior state court proceedings involving these parties.

I.        State Court Proceedings

In October 2016, RMS Asset Management ("RMS") initiated a holdover eviction summary proceeding as attorney-in-fact for U.S. Bank N.A. as trustee of GMAT Legal Title Trust 2014-1 ("GMAT") in the Landlord-Tenant Part of the New York City Civil Court. RMS sought to remove any holdover occupants of 501 West 150th Street after it acquired ownership of the property pursuant to a foreclosure sale. (See Declaration in Support of Motion to Dismiss Amended Complaint, ECF No. 24 ("Greene Decl."), Ex. A.) In relevant part, the holdover proceedings reflect that (1) the occupants were served with a 90-day Notice to Quit and a copy of the Referee's Deed on July 14, 2016; and (2) Encarnacion was identified as one of the occupants of the premises. (See Greene Decl., Exs. A & B.) By letter dated October 26, 2016, Encarnacion sought to inspect the documents evidencing ownership of the premises and to dismiss the holdover proceeding based on her belief that the premises were rent-stabilized.

On November 29, 2016, Defendants obtained a default judgment against Encarnacion after an inquest by the housing court that awarded them possession of the premises and ordered the issuance of a warrant to evict Encarnacion. (Greene Decl., Ex. B.) Encarnacion alleges that this judgment was invalid because it—along with the underlying holdover papers—was not made out to "Niurka Encarnacion©," but to "NIURKA ENCARNACION."[1] She was subsequently served with an eviction notice on December 13, 2016 but claims that this too was invalid because it was addressed to "NIURKA ENCARNACION" and not "Niurka Encarnacion©."

By Decision and Order dated January 10, 2017, the housing court granted

---

[1] Because these arguments—and others made in connection with Encarnacion's opposition to the motion to dismiss—have been routinely rejected by courts as legally frivolous, they are not addressed herein. See Santana v. United States, 2017 WL 2470834, at *2 (S.D.N.Y. June 6, 2017); Muhammad v. Smith, 2014 WL 3670609, at *2 (N.D.N.Y. July 23, 2014).

Encarnacion's motion to vacate the November 29, 2016 default judgment and scheduled a date for trial. In vacating the default judgment, the housing court concluded in part that Encarnacion raised a potentially meritorious defense that the apartment was rent-stabilized. (See Greene Decl., Ex. C.) On February 21, 2017, the housing court reinstated the November 29, 2016 judgment based on Encarnacion's failure to appear for trial, Defendants' prior proof of its prima facie case, and the housing court's determination that the premises were exempt from rent stabilization. (Greene Decl., Ex. D.) In addition to awarding possession of the premises to Defendants and directing the issuance of a warrant of eviction, the reinstated judgment also awarded Defendants a $6,000 money judgment reflecting Encarnacion's use and occupancy of the premises in the intervening period. (Greene Decl., Ex. D.) Encarnacion was initially evicted on March 17, 2017.

Around the time of her removal, Encarnacion challenged the lawfulness of her eviction through an order to show cause in the holdover proceeding and a separate action in New York City Civil Court where she asserted breach of contract, personal injury, and a litany of other claims. (Greene Decl., Ex. F.) Her efforts culminated in the execution of a stipulation of settlement in the housing court proceeding. That stipulation provided that Encarnacion would be reinstated to her apartment until June 30, 2017 so long as she satisfy Defendants' money judgment, withdraw her order to show cause, and discontinue her civil court action with prejudice. (See Greene Decl., Ex. E.) In relevant part, the stipulation also specified that Defendants' judgment and warrant of eviction "remain[ed] valid and enforceable," but stayed execution of the warrant until June 30, 2017. (Greene Decl., Ex. E.) Despite signing the stipulation on March 24, 2017, Encarnacion then repeatedly—but unsuccessfully—sought its vacatur in housing court based on the purported lack of evidence of Defendants' ownership of

the premises. On or about July 14, 2017, Encarnacion was permanently evicted from her apartment.

II.     Federal Court Proceeding

As an initial matter, this Court affords Encarnacion—a pro se litigant—"special solicitude" by construing the Complaint to "raise the strongest claims that it suggests." Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 489 (2d Cir. 2018) (quotation marks omitted). Encarnacion invokes various constitutional provisions, federal criminal and civil statutes, and federal case precedent. However, the gravamen of the Complaint is that the foreclosure and eviction were fraudulent or unlawful because Defendants had not established that they were lawful owners empowered to foreclose, initiate holdover proceedings, or evict her. Specifically, she alleges that Defendants failed to produce the original deed with a "wet ink" signature or evidence of the existence of GMAT Legal Title Trust 2014-1. According to Encarnacion, Defendants' failure to provide such evidence of ownership while demanding payment of the money judgment award constitutes fraud and extortion, rendering the housing court proceedings null and void. Finally, Encarnacion suggests that her laborious efforts in maintaining her apartment would make eviction and/or payment of past-due rent inequitable. Ultimately, Encarnacion seeks compensatory damages arising from her eviction, vacatur of the March 24, 2017 stipulation, and reinstatement to her apartment.

DISCUSSION

A court presented with a motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6) must decide the "jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." Chambers v. Wright, 2007 WL 4462181, at *2 (S.D.N.Y. Dec. 19, 2007); see also Rhulen Agency, Inc. v. Ala.

Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990). Because this Court concludes that it lacks jurisdiction to entertain this action, it does not reach Defendants' arguments that dismissal is appropriate under Rule 12(b)(6) based on res judicata principles and the Complaint's failure to state a claim.

I.   Subject Matter Jurisdiction

A case is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014). Moreover, a court may "consider materials extrinsic to the complaint" when subject matter jurisdiction is challenged. Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir. 2002).

A. Rooker-Feldman Doctrine

Defendants' motion to dismiss for lack of subject matter jurisdiction is principally premised on the Rooker-Feldman doctrine. Accord Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 83 (2d Cir. 2005) (explaining that "Rooker-Feldman goes to subject-matter jurisdiction"). The Rooker-Feldman doctrine is grounded in the precept that the U.S. Supreme Court exclusively possesses federal appellate jurisdiction to reverse or modify state court judgments. See 28 U.S.C. § 1257. Fundamentally, it bars cases brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 287 (2005). Thus, for Rooker-

Feldman to apply, the following four requirements must be met: "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." McKithen v. Brown, 626 F.3d 143, 154 (2d Cir. 2010).

Here, Encarnacion asserts claims that courts routinely dismiss under the Rooker-Feldman doctrine. See, e.g., Zapotocky v. CIT Bank, N.A., 587 B.R. 589, 596 (S.D.N.Y. 2018); Graham v. Select Portfolio Servicing, Inc., 156 F. Supp. 3d 491, 503 (S.D.N.Y. 2016); Hourani v. Wells Fargo Bank, N.A., 158 F. Supp. 3d 142, 146 (E.D.N.Y. 2016); Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 165 (E.D.N.Y. 2010). The first and fourth prongs are clearly met and need not detain this Court long. The housing court entered a judgment awarding possession of the subject premises to Defendants, directing the issuance of a warrant to evict Encarnacion, and awarding a money judgment in favor of Defendants. This judgment was entered on November 29, 2016 and reinstated on February 21, 2017. Likewise, the housing court entered the March 24, 2017 stipulation before Encarnacion commenced this action on July 13, 2017. Cf. Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 273 (E.D.N.Y. 2009) (collecting cases indicating that a stipulation of settlement may constitute a state court judgment for Rooker-Feldman purposes).

The second and third prongs warrant a more fulsome discussion. A federal plaintiff "complains of an injury from a state judgment 'when [a] third party's actions are produced by the state-court judgment and are not simply ratified in, acquiesced in, or left unpunished by it.'" Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc., 652 F. Supp. 2d 463, 469-70 (S.D.N.Y. 2009) (citing Hoblock, 422 F.3d at 87-88)). Here, Encarnacion's asserted injuries—i.e., her eviction from her foreclosed apartment and Defendants' attempts to execute their money judgment—stem directly from the housing court's

6

February 21, 2017 judgment and warrant of eviction, as amended by the March 24, 2017 stipulation entered by the housing court. Specifically, the judgment awarded possession of the subject premises to Defendants, ordered the issuance of a warrant of eviction, and awarded Defendants a monetary judgment. See Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 427 (2d Cir. 2014) (per curiam) ("[T]he injury of which [plaintiff] 'complains' . . . is the state foreclosure judgment. This is evident from the relief [plaintiff] requests—title to and tender of his property and . . . to have the state judgment declared 'void.'" (citation omitted)).

Moreover, the Complaint does not simply invite review of housing court's judgment—it explicitly seeks the vacatur of the March 24, 2017 stipulation and reinstatement to her apartment. In particular, Encarnacion claims that Defendants' failure to address filings to her copyright name or establish legal ownership of her apartment voided the housing court proceedings, including the February 21, 2017 judgment and the March 24, 2017 stipulation. Adjudicating Encarnacion's claims and granting her requested relief would unavoidably and impermissibly require overturning—or at minimum, reviewing the validity of—the housing court's judgment. Cf. Exxon Mobil, 544 U.S. at 293 (characterizing Rooker-Feldman's "paradigm situation" as where plaintiff has "repaired to federal court to undo the [state] judgment"). And while Encarnacion intimates without explanation that the housing court was complicit in Defendants' fraud, this does not alter the Rooker-Feldman analysis. See Zapotocky, 587 B.R. at 596 (noting that even if "the state court judgment was wrongly procured, it is effective and conclusive until it is modified or reversed in the appropriate State appellate or collateral proceeding" (quoting Simpson v. Putnam Cty. Nat'l Bank of Carmel, 20 F. Supp. 2d 630, 633 (S.D.N.Y. 1998))).

The Second Circuit's discussion of Rooker-Feldman in Vossbrinck, a factually

7

analogous case, is instructive. There, the plaintiff alleged that defendants engaged in fraud in a foreclosure proceeding by failing to demonstrate legal ownership of the subject property. Vossbrinck, 773 F.3d at 427. The Second Circuit affirmed the district court's determination that Rooker-Feldman barred plaintiff's claim for title to his foreclosed property and invalidation of the purportedly fraudulent state foreclosure judgment. Vossbrinck, 773 F.3d at 427. Specifically, it concluded that "asking the federal court to determine whether the state judgment was wrongfully issued in favor of parties who . . . lacked standing to foreclose" would "require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error." Vossbrinck, 773 F.3d at 427. Likewise, the Rooker-Feldman doctrine precludes Encarnacion's claims because she effectively seeks a determination as to whether the housing court judgment and stipulation were issued to parties who she contends lacked standing.

B. Other Jurisdictional Issues

Even if the Rooker-Feldman doctrine did not apply, no apparent basis exists for federal subject matter jurisdiction. See In re Tronox Inc., 855 F.3d 84, 95 (2d Cir. 2017) (reiterating that federal courts have an "independent obligation to consider the presence or absence of subject matter jurisdiction sua sponte"). As a threshold matter, because the Complaint alleges that Encarnacion and one of the defendants—Jeffrey S. Greene—are both citizens of New York, there is no diversity of citizenship as required by 28 U.S.C. § 1332.

Nor does 28 U.S.C. § 1331 furnish a basis for subject matter jurisdiction. See Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 137 (2d Cir. 2002) (explaining that in determining whether federal question jurisdiction exists, courts "ask 'whether the cause of action is so patently without merit as to justify . . . the court's dismissal for want of jurisdiction'" (citation omitted) (emphasis and alteration in original)). First, any claim under the Fair Debt Collection

8

Practices Act is meritless. Graham, 156 F. Supp. 3d at 515 (explaining that creditors and mortgage companies collecting their own debts are not "debt collectors" under the FDCPA); Cunningham v. Bank of N.Y. Mellon N.A., 2015 WL 4104839, at *4 (E.D.N.Y. July 8, 2015). Second, Encarnacion's invocation of the Fourteenth Amendment is unavailing because Defendants are not state actors, but plainly "private entities that had a contractual interest in Plaintiff's mortgage." See Cunningham, 2015 WL 4104839, at *2; Betts v. Shearman, 751 F.3d 78, 84 (2d Cir. 2014) ("[C]onstitutional torts are only actionable against state actors or private parties 'acting under the color of' state law." (citation omitted)). Finally, while Encarnacion references 18 U.S.C. § 474, that criminal statute does not provide a private right of action. Kloth-Zanard v. Bank of Am., 2017 WL 4927657, at *4 (D. Conn. Oct. 31, 2017).

II.     Leave to Amend

In this Circuit, courts generally do not dismiss pro se complaints without granting leave to amend at least once if "'a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (citation omitted). However, leave to amend is not warranted where it would be futile. See Hill v. Curcione, 657 F.3d 116, 122-24 (2d Cir. 2011). Here, Encarnacion has already amended her pleading twice. Upon consideration of the Complaint and the voluminous materials that Encarnacion has submitted in opposition to Defendants' motion, this Court concludes that further amendments would not cure these jurisdictional deficiencies. See, e.g., Francis v. Nichols, 2017 WL 1064719, at *8 (S.D.N.Y. Mar. 21, 2017) (dismissing action on Rooker-Feldman and res judicata grounds without leave to amend because amendment would be futile). Accordingly, the Complaint is dismissed with prejudice.

CONCLUSION

Because this Court lacks subject matter jurisdiction over this action, Defendants' motion to dismiss is granted. This Court has considered Encarnacion's remaining arguments and concludes that they are moot or without merit. The Clerk of Court is directed to terminate all pending motions and mark this case as closed.

Dated: September 24, 2018
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.